## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BOOHER, | : | CIVIL NO. 3:22-CV-672 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| CHAD WAKEFIELD, et al., | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

I.    **Introduction**

This case addresses an unfortunate factual scenario which is so strikingly common in the prison context that the arguments center around the very policy which seeks to prevent it. In August of 2021, the plaintiff, Joshua Booher, was repeatedly sexually assaulted by his cellmate. The incidents occurred at the State Correctional Institution at Smithfield (SCI Smithfield), a correctional institution that, at the time, served as a pass-through facility where most inmates stayed no more than twenty-one days. Despite intake procedures which aim to prevent prisoners vulnerable to sexual assault being housed with potential predators, and despite allegations by Booher, a young gay man with visibly effeminate traits and a small frame, that he informed the intake coordinator that he feared for his safety due to these qualities, Booher alleges

1

that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in a cell with a physically imposing, violent convicted sex offender. The defendants argue that, due to the pass-through nature of SCI Smithfield, since the plaintiff's assailant was not flagged at intake as a housing risk, they had no way of knowing he was a violent predator.

We find that the plaintiff has not presented evidence that two of the defendants, Superintendent Wakefield and Corrections Officer (CO) Bishop, had the requisite personal involvement to be subject to constitutional liability. However, despite the defendants' claims to the contrary, our review of the record reveals that issues of material fact exist with regard to whether the remaining two defendants, Gongloff and Fisher, knowingly disregarded a substantial risk to the plaintiff's safety by placing him in a cell with his assailant. Accordingly, we will grant the defendants' motion in part and deny it in part.

## II.    **Factual and Procedural Background**

Booher alleges that the defendants violated the Eight Amendment by failing to protect him from being sexually assaulted by his cellmate, Dwan Connor, over several days after Booher was moved into Connor's cell. The facts that underlie the cause of action are, for the most part, undisputed. The plaintiff, Joshua Booher was incarcerated at SCI Smithfield in August of 2021. (Doc. 48, ¶ 1). Booher describes

2

himself as openly gay with a small physical build and visibly effeminate traits. (Doc. 56-1, ⁋ 2). Booher alleges that he was moved into a cell with Connor, who he describes as, "a sex offender who was 6' 4" with an athletic build," (Doc. 56, at 6), at Connor's request, by CO Defendant Gongloff with the approval of the unit manager, Defendant Fisher. He alleges that Connor proceeded to sexually assault him for several days before Connor was transferred out of the facility. According to Booher, the defendants' actions in moving him into the cell with Connor and failing to protect him from the sexual assaults violated his constitutional rights.

The parties' accounts diverge in meaningful and material ways with regard to Booher's agency and desire to share a cell with his assailant. Booher alleges that he never requested to share a cell with Inmate Connor, and no correctional officer asked him whether he wanted to share a cell with him. (Doc. 56-1, ⁋ 10). He stated that he was afraid he would be beaten up if he did not want to share a cell with Inmate Connor, so he complied with the arrangement. (Id., ⁋ 12). For his part, Defendant Gongloff alleges that Booher specifically asked to cell with his assailant, stating "Booher came out and told me verbally and physically that he wanted to move into that cell. I saw no physical or any kind of, like, reservation about it at all." (Doc. 48-7, at 15). And Defendant Fisher, who approved the request, stated that Gongloff asked him if Booher and Connor could move together, and he stated that if they both agreed

they could. (Doc. 48-6, at 17). He did not have any personal interaction with them regarding the move but approved it based on what Gongloff told him. (Doc. 48-6, at 17-18).

The stories also diverge with regard to whether the corrections officers were aware that Booher was particularly vulnerable to assault and that celling him with Connor, a convicted sex offender, would put him at risk. Booher alleges that he informed the intake coordinator that he was worried for his safety and felt particularly vulnerable due to his sexual orientation and physical build and that the intake coordinator told him she would note those concerns and notify the corrections officers of the same. (Doc. 56-1, ¶¶ 4-5). The corrections officer defendants deny that Booher was flagged as vulnerable in the DOC system. However, Gongloff acknowledged that "as a generalization," openly gay, slightly built, effeminate inmates could be considered vulnerable. (Doc. 48-7, at 14). The plaintiff argues that, due to his physical appearance and demeanor, it was obvious that Booher would have been a target. He also presents evidence that other inmates considered him "a chick" and that it was a "power play" on the part of Connor to have him moved into his cell. (See Doc. 56, at 7).

With regard to what the corrections officers knew about Connor, there is seemingly a disconnect between the undisputed fact that Connor is a convicted sex

offender and him being flagged as a housing risk by the prison intake system. At the time of the alleged assaults, SCI Smithfield was a pass-through correctional institution, meaning, generally, inmates stayed at the facility no more than twenty-one days. (Doc. 48-7, at 17). Due to the constantly rotating population of SCI Smithfield, Defendant Fisher, the unit manager who made the final approval on cell assignments, (Doc. 48, ⁋ 8), stated that he did not typically "look into the details" of prisoners' status as predators unless they were flagged as a housing concern in the computer system using a PREA assessment. (Doc. 48-6, at 13-14). Fisher admitted that the PREA scores are assigned based upon an interview with the inmate but also consider the underlying criminal charges of which the inmate was convicted. (Id.) In this case, Connor was not flagged in the computer system as a housing concern sexually violent predator despite his state conviction as a sex offender. (Id.) Fisher stated that if Connor had been flagged in the DOC system as a sexually violent predator he could not live with a potential sexual victim. (Doc. 48-6, at 14). Nonetheless, it is undisputed that Connor was known to corrections officers because he was a "block worker" and Fisher also admitted that he knew Connor personally. (Doc. 48-6, at 15-16).

According to Booher, he wanted to alert the prison staff that he was being assaulted but he was afraid of retaliation. (Doc. 56-1, ⁋ 14). He maintains that he

asked Defendant Bishop for a grievance form and although she told him she would provide one she never did. (Id., ¶ 15).

On these facts, on May 6, 2022, Booher filed a complaint naming Chad Wakefield, Superintendent of SCI Smithfield, and several "John Doe" corrections officers as defendants. He later filed an amended complaint, (Doc. 18), the operative pleading in this case, which identified seven corrections officer defendants, Gongloff, Deljovnovan, McNeal, Bishop, Cook, Pine, and Fisher, in addition to Superintendent Wakefield. In his brief in opposition to the motion for summary judgment, Booher has conceded that the claims against Defendants Cook, Pine, Deljovnovan, and McNeal should be dismissed. Thus, we only consider whether summary judgment should be granted as to Defendants Wakefield, Gongloff, Fisher, and Bishop.

With respect to these defendants, Booher alleges that, as Superintendent of SCI Smithfield, Wakefield violated his Eighth and Fourteenth Amendment rights by establishing and maintaining deficient policies and procedures related to the safety of inmates who were particularly vulnerable to sexual abuse and that he was personally involved in the decision-making that led to his assault. He also asserts Eighth Amendment claims against defendants Gongloff and Fisher under theories of failure to protect and deliberate indifference, alleging that these defendants knowingly placed him in a cell with a violent sexual predator despite his predisposition to

6

victimization. As to Defendant Bishop, he claims she is liable under an Eighth Amendment failure to intervene theory, since he asked her for a grievance while the assaults were ongoing, but she failed to provide one.

The defendants have now moved for summary judgment, (Doc. 42), arguing the plaintiff has not presented enough evidence to prove they violated his rights. The motion is fully briefed and ripe for disposition. (Docs. 47, 48, 56, 57, 65). After a review of the record, we find that Booher has not established the requisite personal involvement of Defendant Wakefield to impute constitutional liability upon him for the alleged assaults. Moreover, he has simply not provided enough evidence that Defendant Bishop's alleged failure to provide him with a grievance amounts to a constitutional violation. On the contrary, due to the clear factual disputes regarding whether Defendants Gongloff and Fisher knew of and consciously disregarded the serious risk to Booher's safety by placing him in a cell with a convicted violent sexual predator, we cannot say that these defendants are entitled to judgment as a matter of law. Accordingly, we will grant the defendants' motion for summary judgment as to Defendants Wakefield and Bishop but deny the motion as to Defendants Gongloff and Fisher.

## III.    <u>Discussion</u>

### A. <u>Motion for Summary Judgment – Standard of Review</u>

The Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. <u>Id.</u>, at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Further, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-

moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against this legal backdrop that we review the plaintiff's motion in this case.

**B.** __The Plaintiff Has Not Established the Requisite Personal Involvement By of Defendant Wakefield Impute Liability Upon Him.__

Booher alleges his claims of constitutional liability under § 1983. In order to prevail on such a civil rights claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Furthermore, it is axiomatic that in order to be liable under § 1983, a defendant "must have had personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Such personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence. Rode, 845 F.2d at 1207. These allegations, however, must be pleaded and proven with sufficient particularity. Id. Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegation of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

At the outset, Booher attempts to impute liability upon Defendant Wakefield by virtue of his position as superintendent of the prison where he was assaulted. This

he may not do.

In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined circumstances. First, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendant actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). In particular, with respect to prison supervisors, it is well-established that: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete,

845 F.2d 1195, 1207 (3d Cir. 1988)).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. ... See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.*" Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006) (emphasis

14

added).

Indeed, we note that "[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal." <u>Bistrian v. Levi</u>, 696 F.3d 352, 366 n.5 (3d Cir. 2012) (quoting <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 n.8 (3d Cir. 2010)). To the extent that supervisory liability survives after <u>Iqbal</u>, the scope of that liability is clearly and narrowly defined. As the Court of Appeals has observed:

> "There are two theories of supervisory liability" one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."

<u>Santiago</u>, 629 F.3d at 129 n.5 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004)).

Here, the plaintiff attempts to impute liability upon Defendant Wakefield under the "policy, practice or custom" theory, alleging that Defendant Wakefield established and maintained deficient policies and procedures related to the safety of inmates who were particularly vulnerable to sexual abuse and as such he was personally involved in the decision-making that led to the violation of Booher's

constitutional rights. (Doc. 18, ¶¶ 26-27).

The Third Circuit recognizes that supervisors may be exposed to liability on the basis that they maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury. In cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of <u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise. Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and, (4) the injury resulted from the policy or practice." <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 134 (3d Cir. 2001) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir.1989).

Viewed against these constitutional benchmarks, Booher has failed to present evidence to support the view that Wakefield is constitutionally liable. To start, the plaintiff has not presented evidence of a *specific* policy which created an unreasonable risk. The plaintiff takes general issue with the lack of information provided to corrections officers regarding the status of incoming inmates as housing

16

risks or particularly vulnerable. He argues that the failure to identify him as particularly vulnerable to assault, despite expressing his concerns to the intake officer, and the failure to identify Connor as a housing risk despite his sex offense conviction, were failures of policy. But, even if we were to conclude that there were failures in the way Booher and Connor were classified upon intake, the plaintiff has not explained what specific DOC policy he alleges posed an unnecessary risk.

Moreover, while the plaintiff attacks the general intake process which failed to flag his assailant as a sexually violent predator, he provides no evidence of Defendant Wakefield's involvement in the process or knowledge of its risks beyond the implication of his involvement in the formation of these policies by virtue of his position as superintendent. Under the <u>Sample</u> four-part test:

> [O]ne way—perhaps the easiest way—a plaintiff can make out a supervisor liability claim is by showing that "the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." <u>Id</u>. But that is not the only way to make out such a claim, as "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." <u>Id</u>.

<u>Beers-Capitol</u>, 256 F.3d at 134. Here, there is simply no evidence that Wakefield was aware of any deficiencies in the system which identified housing risks and particularly vulnerable inmates at SCI Smithfield. The plaintiff has not presented

evidence of a pattern of injuries resulting from such policies and, to the extent that the plaintiff argues the risk of injury resulting from the current system is "so great and so obvious" that indifference can be implied from the failure of supervisory officials to respond, this determination would be a bridge too far given the paucity of evidence connecting Wakefield to any of the alleged policies or injuries. Thus, the plaintiff's claims against Superintendent Wakefield which attempt to impute liability upon him for the alleged Eighth Amendment violations of his subordinates cannot lie.

Nor can the plaintiff subvert the requirements of Eighth Amendment supervisory liability by asserting his claim under the Fourteenth Amendment. Indeed, Booher appears to assert a general Fourteenth Amendment substantive due process claim arising out of the same factual scenario which supports his more specific Eighth Amendment claims. This he cannot do since Booher's broad due process claim is barred by the "more specific provision" rule.

The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, and property without due process of law. U.S. Const. amend. XIV. However, the more specific provision rule informs us that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

specific provision, not under the rubric of substantive due process." <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621 F.3d 249, 260 (3d Cir. 2010) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In this case the plaintiff's Fourteenth Amendment claim arises from the very same conduct upon which he bases his failure to protect claims, which fall under the Eighth Amendment's protections. In such instances, the more specific Eighth Amendment claims control, and the general due process claim should be dismissed. <u>See</u> <u>Hitner v. Alshefski</u>, 2020 WL 3288157, at *2 (M.D. Pa. 2020) (denying Fourteenth Amendment Due Process claim based on allegations of First Amendment access-to-courts and retaliation).

Having concluded that Booher has not presented sufficient evidence to impute Eighth Amendment liability upon Defendant Wakefield, and his Fourteenth Amendment claim fails under the "more specific provision" doctrine, summary judgment should be granted as to Defendant Wakefield.

### C. <u>The Plaintiff Has Not Provided Evidence That Defendant Bishop Violated His Constitutional Rights.</u>
'
-
The plaintiff has also not presented evidence that Defendant Bishop's actions rise to the level of a constitutional violation. On this score, Booher alleges only that,

at some point during the several days that Connor was assaulting him,[1] he asked Defendant Bishop for a grievance form and, although she told him she would provide one, she never did. (Id., ¶ 15). He maintains that Defendant Bishop's failure to provide him with a grievance amounts to an Eighth Amendment violation under a failure to intervene theory because, had Defendant Bishop provided the requested grievance, Booher would have been able to alert prison staff to the situation without subjecting himself to retaliation by complaining publicly.

A failure to intervene theory under the Eighth Amendment typically lies where a corrections officer witnesses a constitutional violation, for example another officer using excessive force against an inmate and does nothing to stop it. As we have previously noted:

> [C]orrections officers may be liable under § 1983 for failing to intervene . . . if they had a reasonable opportunity to do so. A valid failure to intervene claim requires: (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith, 293 F.3d at 650-51.

Leaphart v. Campbell, No. 1:21-CV-1293, 2022 WL 1158255, at *7 (M.D. Pa. Apr. 19, 2022). For example, "'[i]f a police officer, whether supervisory or not, fails or

---

[1] The pleadings do not state the exact dates the assaults were taking place, but the accompanying police report, filed under seal, indicates that Bishop and Connor were celled together for three days, throughout which time Booher alleges Connor sexually assaulted him.

refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983. However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002) (citing Clark, 783 F.2d at 1007) (instructing the district court upon remand to determine whether the officer was in a position to intervene); Brishke, 466 F. 2d at 11 (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman, 639 F.2d at 423-24 (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer)) (internal citations omitted).

The plaintiff argues that Defendant Bishop had a "realistic and reasonable opportunity to intervene" in his sexual assault because he asked for a grievance during while the sexual assaults were ongoing. The plaintiff does not provide any precise timeline regarding when during the period of the ongoing assaults he asked Defendant Bishop for a grievance, nor does he state that he informed Defendant Bishop that he was being sexually assaulted. Indeed, in our view, there simply is no evidence that Defendant Bishop was aware Connor was assaulting Booher and had any opportunity to intervene. Moreover, relevant caselaw indicates that officers have a duty to intervene in situations where they witness a constitutional violation actively

taking place, and, even if we fill in the blanks for the plaintiff and assume that, not only did he ask Bishop for a grievance while he was celled with Connor and after Connor assaulted him, but that he informed Bishop that Connor had assaulted him, there is simply no evidence that Bishop ever had a realistic and reasonable opportunity to intervene in an active assault by Connor. Indeed, the Court of Appeals has held that "there is no apparent obligation for prison officials to investigate prison grievances." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011) (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973)) and inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)).

Having found the alleged actions of Defendant Bishop did not violate Booher's constitutional rights, summary judgment will be granted in her favor.

### D. **A Question of Fact Exists As To Whether Defendants Gongloff and Fisher Were Deliberately Indifferent to a Substantial Risk to the Plaintiff's Safety.**

Although we find the plaintiff has not presented evidence to implicate Defendants Wakefield and Bishop, it is undisputed that Defendants Gongloff and Fisher took active part in placing the plaintiff in a cell with his assailant. The only question, which, in our view is one for a jury which cannot be decided that this stage

22

in the proceedings, is whether, by doing so, these defendants knowingly disregarded a substantial risk of serious harm.

On this score, the Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment, and this proscription by extension protects prisoners against the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). "This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F. 3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Although "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety . . . [b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). As such, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828.

In order for an inmate to prevail on an Eighth Amendment claim under a failure-to-protect theory, he must establish two elements. First, he must demonstrate

"that he is incarcerated under conditions posing a substantial risk of serious harm."
Id. at 834. This first objective prong is satisfied when the alleged "punishment" is
"objectively serious." Id. Next, the prison officials who are alleged to have been
deliberately indifferent "must have a sufficiently culpable state of mind." Hamilton,
117 F.3d at 746 (citing Farmer, 511 U.S. at 834). Any analysis of conditions of
confinement in examining an Eighth Amendment cruel and unusual punishment
claim must be grounded in the totality of the circumstances. Rhodes, 452 U.S. at 363.

Booher alleges that Defendants Gongloff and Fisher violated his Eighth
Amendment right to be free from cruel and unusual punishment because, despite
being aware that he was particularly vulnerable to being sexually abused as an
effeminate openly gay man with a slight build, they did not put any precautions in
place to protect his safety and placed him in a cell with a known sexually violent
predator. For their part, the defendants argue that they did not know Booher was
particularly vulnerable, or that Connor was a violent sexual predator, because neither
were flagged as such in the prison computer system which designates housing risks
based upon an intake interview and PREA assessment. In fact, Defendant Gongloff
stated that Booher asked to be celled with Connor, a claim Booher denies.

Despite the defendant's arguments to the contrary, given that we must view the
facts in a light most favorable to the plaintiff, our review of the record reveals

significant conflicts in the parties' stories regarding what the defendants knew that simply cannot be resolved at this stage of the proceedings. For purposes of an Eighth Amendment failure-to-protect claim, an inmate must show subjective culpability on the part of each defendant, establishing that a prison official acted either deliberately or with deliberate indifference to the inmate's health or safety, which requires that the official know of and disregard an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. As noted, an official must be both aware of facts from which inference could be drawn that a substantial risk of serious harm exists and must also draw that inference. Id. Inmates seeking redress under the Eighth Amendment for injuries inflicted by another inmate do not necessarily need to show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

Here, the defendants attempt to escape liability by placing blame on the PREA assessment which failed to flag Connor as a housing risk, despite his conviction as a violent sex offender, and failed to notify them that Booher would be particularly vulnerable to assault. They also blame the nature of the institution itself at the time, citing to the fact that SCI Smithfield was a "pass-through" facility at the time and that they did not know the inmates themselves since they spent such a short time at the

facility.

At the outset, we are not persuaded that the defendants may rely solely on the PREA assessment when determining whether a substantial risk to inmate safety exists in cell placement. As the plaintiff points out, the very facts of this case highlight that the system is not completely fail-safe. Moreover, while the test for deliberate indifference is a subjective one, requiring us to look "to what the prison official actually knew rather than what a reasonable official in his position would have known," Beers-Capitol at 131, this subjective standard does not insulate official from liability where such official choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison official will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842.

In his deposition, Defendant Gongloff admitted that known sexually violent predators would, under typical procedures, be single-celled or separated from inmates considered vulnerable but "at the time because we were getting new inmates, information like that wasn't readily available." (Doc. 48-7, at 13-14). He went on to

state, "if one of the other inmates would have been prey, so to speak, or – or vulnerable to being sexually raped, we would definitely keep that person away from him." (Id., at 14), and  acknowledged that "as a generalization," openly gay, slightly built, effeminate inmates could be considered vulnerable. The plaintiff, an openly gay, slightly built, effeminate man, argues the defendants knew he was particularly vulnerable to sexual assault because of his physical characteristics that were known to anyone who interacted with him. Indeed, the evidence shows that at least one other inmate considered him "a chick." (See Doc. 56, at 7). A jury could find that the defendants knew of his status as a vulnerable inmate based on these characteristics. See e.g. Bishop v. Hackel, 636 F.3d 757 (6th Cir. 2011) (finding summary judgment inappropriate where a jury could find corrections officers were aware of a plaintiff's status as a vulnerable inmate based on physical characteristics). Moreover, although Defendant Gongloff denied knowing this fact, Booher alleges he told intake officers he was particularly vulnerable and asked for protection. (Id., at 15).

As to Defendant Fisher, he stated that he did not know that Connor was a sexually violent predator because, due to the constantly rotating population of SCI Springfield, he did not typically "look into the details" of prisoners' status as predators unless they were flagged as a housing concern by the PREA score. But he also stated that if Connor had been flagged in the DOC system as a sexually violent

predator he could not live with a potential sexual victim. (Doc. 48-6, at 14). Nonetheless, although he may not have "looked into the details" of each prisoner's status, Fisher admitted that Connor was known to him because he was a volunteer worker on the block. (Doc. 48-6, 15-16).

In our view, on these facts, a jury could find that the defendants knew of and disregarded a substantial risk to Booher's safety by placing him in a cell with Connor. Given the conflicting stories regarding how Booher came to be placed in the cell with Connor, and whether the defendants knew of Connor's violent sex offender conviction, the defendants cannot solely rely upon the fact that Connor was not flagged as a housing risk to escape liability as a matter of law.

Nor do we find the defendants are protected by qualified immunity in this case. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly

violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be

29

clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." D.C. v. Wesby, 583 U.S. 48, 63 (2018) (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

Here, Booher's constitutional right to be free from deliberate indifference to assault and sexual abuse was clearly established at the time of the alleged constitutional violation. In fact, the Supreme Court's seminal case establishing the subjective standard for deliberate indifference acknowledges that prison officials who knowingly disregard the risk to inmates with feminine characteristics who are vulnerable to sexual assault could be constitutionally liable. See Farmer v. Brennan, 511 U.S. 825 (1994). But the defendants urge us to narrow the scope of our inquiry, arguing that, because they were following internal procedure, they could not have

been on notice that their actions could violate Booher's rights. Despite the defendants' narrow view of the right at issue, the Third Circuit has noted, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." E.D. v. Sharkey, 928 F.3d 299 (3d Cir. 2019) (quoting Kedra v. Schroeter, 876 F.3d 424, 450 (3d Cir. 2017)) (internal quotation marks omitted). In our view, the defendants would have been on notice that placing a particularly vulnerable inmate in a cell with a violent sex offender would violate his constitutional rights. See e.g. Farmer 511 U.S. 825; E.D. v. Sharkey, 928 F.3d 299; Bishop v. Hackel, 636 F.3d 757 (6th Cir. 2011). Indeed, it is likely the very reason that the risk assessment they rely upon exists. Thus, having concluded that a jury could find Defendants Gongloff and Fisher knew of, but disregarded, the risk posed by placing Booher in a cell with Connor, these defendants are not shielded from liability by the doctrine of qualified immunity.

Accordingly, the defendants' motion for summary judgment is GRANTED as to Defendants Wakefield, Deljovnovan, McNeal, Bishop, Cook, and Pine and DENIED as to Defendants Gongloff and Fisher.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: August 26, 2025